**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| COLEY TERRANCE HOLMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:12CR72-1 |
| | ) | 1:14CV549 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 40),[1] as well as his Motion to Amend or Supplement (Docket Entry 53). For the reasons that follow, the Court should deny both Motions.

<u>I. INTRODUCTION</u>

This Court (per Chief United States District Judge William L. Osteen, Jr.) previously entered a Judgment against Petitioner imposing, inter alia, a prison term of 186 months, as a result of his guilty plea to possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1), and his record of three or more convictions for a "violent felony" and/or "serious drug offense" as provided in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).

---

[1] Parenthetical citations refer to Petitioner's criminal case.

(Docket Entry 28 at 1-2; <u>see also</u> Docket Entry 11 at 5-20 (documenting Petitioner's guilty plea colloquy); Docket Entry 32 at 19-22 (setting forth findings that ACCA applied due to, inter alia, Petitioner's Massachusetts convictions for possession with intent to distribute a class B controlled substance (on three occasions), assault and battery with a dangerous weapon (on two other occasions), and assault with a dangerous weapon (on yet another occasion)).) The United States Court of Appeals for the Fourth Circuit affirmed and the United States Supreme Court declined review. <u>United States v. Holman</u>, 521 F. App'x 162 (4th Cir.), <u>cert. denied</u>, ___ U.S. ___, 134 S. Ct. 334 (2013). Petitioner then filed his Section 2255 Motion. (Docket Entry 40.) The United States responded (Docket Entry 44) and Petitioner replied (Docket Entry 47). He also filed the instant Motion to Amend or Supplement. (Docket Entry 53.)

## II. SECTION 2255 MOTION

Petitioner's Section 2255 Motion identifies <u>four</u> inter-related grounds for relief:

A) Petitioner "was denied effective assistance of counsel" (Docket Entry 40, § 12(Ground One));[2]

___

[2] Petitioner's Section 2255 Motion consists of a standard form (cited herein by section number), as well as a one page affidavit ("Section 2255 Affidavit"), a 74-page memorandum ("Section 2255 Memorandum"), and a two-page letter with cover page (all cited herein by the page number appended upon docketing in the CM/ECF

(continued...)

2

B) Petitioner "was denied effective assistance on appeal" (id., § 12(Ground Two));

C) "[r]ecent developments from the Supreme Court establish that [Petitioner] is not an Armed Career Criminal" (id., § 12(Ground Three)); and

D) Petitioner's "attorney failed to press void for vagueness and the avoidance doctrine concerning § 924(e)" (id., § 12(Ground Four)).

In support of the foregoing claims, Petitioner's Section 2255 Motion simply refers to his Section 2255 Memorandum. (Id., § 12(Ground One)(a), (Ground Two)(a), (Ground Three)(a), & (Ground Four)(a).) Under the heading "Ground One" (id. at 50), the Section 2255 Memorandum identifies three instances of ineffective assistance concerning Petitioner's guilty plea and/or sentencing:

i) failing to "investigate any potential prior convictions that may be used in triggering a conviction under the ACCA" (id.; see also id. at 51 ("[A]n investigation would have uncovered significant constitutional deficiencies in state counsel's practices [regarding Petitioner's prior convictions]."), 53 ("The alleged prior convictions in this case are, a fortiori, legally flawed. Their files would have showed, as in many state

---

[2](...continued)
system). For ease of reading, when quoting handwritten portions of Petitioner's filings that appear in all capitals, this Recommendation will use standard capitalization conventions.

proceedings, that they are a product of over-worked defense attorneys and crowded dockets. Specifically, not one contains a Padilla[ v. Kentucky, 559 U.S. 356 (2010),] warning.'"));

ii) "fil[ing with the Court Petitioner's] communications to [counsel] conceding to prior convictions [Petitioner] specifically objected to" (id. at 50); and

iii) "assur[ing Petitioner he] would not qualify for the [ACCA]" (id.).

Regarding "Ground Two" (id. at 54), Petitioner's Section 2255 Memorandum states that his counsel acted ineffectively by neglecting to argue on direct appeal:

i) that Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151 (2013), abrogated Almendarez-Torres v. United States, 523 U.S. 224 (1998), and bars judicial fact-finding as to prior convictions under the ACCA (id. at 56-58);

ii) that Descamps v. United States, ___ U.S. ___, 133 S. Ct. 2276 (2013), precludes treatment of Petitioner's Massachusetts convictions for assault and battery with a dangerous weapon and/or assault with a dangerous weapon as "violent felonies" under the ACCA (id. at 58-59); and

iii) "that, as applied, the penalty imposed under the ACCA is not tolerated by the Eighth Amendment" (id. at 60).

The "Ground Three" section of Petitioner's Section 2255 Memorandum (id. at 69-81) contends that:

4

i) under <u>Descamps</u>, his Massachusetts convictions for assault and battery with a dangerous weapon and/or assault with a dangerous weapon "categorically cannot be used as predicates under the ACCA" (<u>id.</u> at 73);

ii) his "Massachusetts drug crimes are not 'serious drug offenses' in light of <u>Moncrieffe[ v. Holder</u>, ___ U.S. ___, 133 S. Ct. 1678 (2013),] in conjunction with <u>Descamps</u>" (<u>id.</u> at 75); and

iii) "<u>Alleyne</u> destroyed the already gravely wounded decision in <u>Almendarez-Torres</u>" (<u>id.</u> at 76).

Finally, Petitioner's Section 2255 Memorandum explains that "Ground Four" ascribes ineffectiveness to counsel "for failing to challenge the constitutionality of 18 U.S.C. § 924(e)'s residual clause" (<u>id.</u> at 82) and/or to argue that the constitutional avoidance canon of statutory construction "prevents the residual provision from extending to [Petitioner's] alleged violent past state convictions because such determinations raise significant constitutional concern" (<u>id.</u> at 87).

## A. Ground One: Plea/Sentencing Ineffective Assistance

Ground One alleges three sub-claims of ineffective assistance as to Petitioner's plea or sentence: i) failing to uncover <u>Padilla</u> defects in prior convictions; ii) filing Petitioner's objections to the Presentence Report; and iii) assuring Petitioner the ACCA did not apply. (<u>See</u> Docket Entry 40 at 50-53.) Petitioner possessed a federal constitutional right to effective assistance of counsel

5

in his federal criminal case. See U.S. Const. amend. VI; McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). To establish constitutional ineffectiveness, Petitioner must show that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687–94 (1984). "Surmounting *Strickland*'s high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also United States v. Galloway, 749 F.3d 238, 241 (4th Cir. 2014) ("To meet th[e prejudice] element of an ineffective assistance claim, [the defendant] would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable." (internal quotation marks omitted)). Ground One falls short under this standard.[3]

---

[3] Under the heading "Facts Pertinent to [Petitioner's] Section 2255" (Docket Entry 40 at 17), Petitioner also alleged as follows:

> At the time of this event, [Petitioner] had been exhibiting behavioral patterns since his teens that reflected concerns of mental instability. Regardless of this Court's bolstering concerning [counsel's] representation[,] counsel's duty to investigate was more than merely lacking. Early on in the case[, Petitioner] brought to [counsel's] attention [Petitioner's] mental conditions. [Counsel] was content with avoiding a trial
>                                                              (continued...)

i.  Failing to Discover <u>Padilla</u> Defects in Prior Convictions

As to Ground One, Petitioner first has charged that his counsel failed to "investigate any potential prior convictions that may be used in triggering a conviction under the ACCA . . . ." (Docket Entry 40 at 50.)  This sub-claim fails for want of any showing of prejudice (as required by <u>Strickland</u>).  Petitioner

---

[3](...continued)
and in the absence of a thorough investigation[,] counsel advised [Petitioner] to plead guilty.

. . . At the August 29, 2012 sentencing proceeding[, Petitioner] requested new counsel because [his counsel] had still not investigated the alleged prior convictions and the mental health records.  This Court construed [Petitioner's] concerns with [counsel's] objections and denied the request for new counsel.  As to the mental health investigation, [counsel] conceded he did not attempt to contact Dr. Corbin.

(<u>Id.</u> at 17-19 (internal unmatched quotation mark and footnote omitted).)  In discussing Ground One, Petitioner did not develop a claim of ineffective assistance related to mental health, mental health records, or Dr. Corbin's treatment.  (<u>See</u> <u>id.</u> at 50-53; <u>see also</u> Docket Entry 47 at 2.)  Further, Petitioner neither has sought to invalidate his guilty plea nor to challenge any aspect of his sentence other than the ACCA enhancement.  (<u>See</u> <u>id.</u> at 88.) Additionally, the record reflects that:  (1) the Court continued Petitioner's sentencing from the originally scheduled date of August 29, 2012, to allow further efforts to obtain records from Dr. Corbin and/or any other mental health care provider referenced by Petitioner (<u>see</u> Docket Entry 36 at 9-15); (2) all available mental health records were obtained before sentencing (<u>see</u> Docket Entry 31 at 2); and (3) the Court considered Petitioner's mental health at sentencing (<u>see</u> Docket Entry 32 at 29-32).  Under these circumstances, to the extent Petitioner's above-quoted statements constitute an ineffectiveness claim regarding any mental health-related issue, that claim "is vague, conclusory, speculative, and unsupported and fails for all these reasons." <u>Cabrera v. United States</u>, Nos. 1:09CR323-1, 1:12CV695, 2014 WL 6386902, at *9 (M.D.N.C. Nov. 14, 2014) (unpublished) (Osteen, Jr., C.J.).

attempted to show such prejudice by alleging that an "investigation would have uncovered significant constitutional deficiencies in state counsel's practices [related to those convictions]." (Id. at 51.) "Specifically, not one [of the court files for those convictions] contains a Padilla warning." (Id. at 53; see also id. at 24 ("An investigation into predicate prior crimes often reveal[s] that lawyers in these alleged offense[s] were wholly ineffective where, as here, there is no warning of potential collateral consequences. That is the case here. [Petitioner's counsel] had ample time to move to have these alleged convictions set aside. For example, [he] could have moved under [Massachusetts law], arguing that . . . the attorneys [representing Petitioner in Massachusetts] failed in their duties because prior to pleading no lawyer had inform[ed Petitioner] that [his pleas] may later trigger an enhanced penalty under a recidivism statute.").)[4]

---

[4] Petitioner additionally has contended that "a review of the North Carolina possession w[ith] intent to sell/deliver file would have revealed the judgment was imposed in the absence of [Petitioner] (Case 90 CRS 11813)." (Docket Entry 40 at 53.) For reasons discussed elsewhere in this Section and Section III, Petitioner's Massachusetts convictions for possession with intent to distribute a class B controlled substance (on three occasions), assault and battery with a dangerous weapon (on two other occasions), and/or assault with a dangerous weapon (on yet another occasion) make him an Armed Career Criminal. Any challenge counsel might have mounted to the cited North Carolina drug conviction thus would not have affected Petitioner's sentencing under the ACCA. The absence of such a challenge therefore did not subject Petitioner to prejudice as required to establish an ineffective assistance claim. See Galloway, 749 F.3d at 241.

In *Padilla*, "[t]he Supreme Court held that the Sixth Amendment right to effective assistance of counsel requires 'that counsel must inform her client whether his plea carries a risk of deportation.'" *Vaughn v. United States*, Civ. Action No. 3:12-1519, Crim. Action No. 3:02-69-09, 2013 WL 3716659, at *4 (S.D.W. Va. July 12, 2013) (unpublished) (quoting *Padilla*, 559 U.S. at 374). "Here, [Petitioner] argues by analogy that his attorney[s in prior state cases] provided ineffective assistance by failing to warn [him] of the collateral consequences of [a] conviction . . . [i.e.] that [a] conviction could be used to enhance his sentence in future criminal convictions." *Id.* (internal brackets and quotation marks omitted). "Even accepting [the] argument that *Padilla* now requires counsel to warn defendants that their conviction might be used to enhance future sentences, this new rule [could not invalidate Petitioner's pre-*Padilla* convictions], as the Supreme Court has explicitly held that *Padilla* does not apply retroactively." *Id.* (citing *Chaidez v. United States*, ___ U.S. ___, ___, 133 S. Ct. 1103, 1107 (2013)) (internal footnote omitted).[5]

---

[5] Moreover, persuasive authority counsels that *Padilla* does not require an attorney to warn a defendant that a conviction in a pending case could result in an enhanced sentence in a later case. *See, e.g.*, *United States v. Reeves*, 695 F.3d 637, 640 (7th Cir. 2012) ("We pause for a moment to consider the absurd ramifications of the rule that [the defendant] asks us to create. Using *Padilla* as a springboard, we would be forced to hold that counsel has a constitutional duty to advise the client as to how he might best continue his criminal activity while minimizing his risk of future
(continued...)

In other words, if counsel had investigated Petitioner's Massachusetts convictions and had collaterally attacked them due to a lack of documentation that his attorney(s) in those cases warned him that those convictions could serve as ACCA predicates in a future federal case, that attack would have failed. That fact defeats the instant ineffective assistance sub-claim. See Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [i]s not constitutionally ineffective in failing to [act if] . . . it would have been futile for counsel to have done so . . . .").

ii. Filing Petitioner's Objections to the Presentence Report

Ground One next asserts that Petitioner's counsel performed ineffectively by "fil[ing with the Court Petitioner's]

---

[5](...continued)
punishment. This would not only represent unattractive public policy, it finds no support in precedent. The Supreme Court created a rule in *Padilla* specific to the risk of deportation, and we see no justification for extending that to the realm of future criminal sentence enhancements."); United States v. Parrino, No. 3:11MJ218DW, 2015 WL 4272022, at *10 (W.D. Ken. July 13, 2015) (unpublished) ("[W]e are unaware of any published federal decision that has extended *Padilla* outside the context of misadvice concerning deportation. Courts instead have expressly declined to extend *Padilla* to encompass misadvice to, or a failure to advise, a defendant concerning future penalty enhancements . . . ."), aff'd, No. 15-5921, 2016 WL 3749055 (6th Cir. July 12, 2016) (unpublished). Indeed, in Massachusetts (where Petitioner sustained convictions Padilla purportedly now has rendered infirm), courts have rejected efforts to overturn guilty pleas based on the lack of a "Padilla warning" about the potential use of the resulting convictions to enhance the punishment available in a subsequent federal prosecution. See Massachusetts v. Person, Nos. 12-P-1433, 13-P-71, 3 N.E.2d 112 (table), 84 Mass. App. Ct. 1136 (table), 2014 WL 590757 (Feb. 18, 2014) (unpublished).

communications to [counsel] conceding to prior convictions [Petitioner] specifically objected to." (Docket Entry 40 at 50.) A review of the sentencing proceedings in this case confirms that this ineffective assistance sub-claim lacks merit, as Petitioner cannot show that his counsel acted deficiently by making the filing at issue or that Petitioner suffered any prejudice as a result.

The sentencing process commenced with the Probation Office preparing a Presentence Report ("PSR"), which it "disclosed on July 3, 2012." (Docket Entry 50 at 37.) Petitioner received a copy of the PSR, as well as directions from his counsel "to go over it and whatever [Petitioner] object[ed] to, or whatever, to write it down, so [Petitioner] did [that] to the best of [his] ability." (Docket Entry 32 at 14-15.) Indeed, Petitioner wrote out nine pages of objections, swore to them before a notary (on August 10, 2012), and sent the sworn document to counsel. (See Docket Entry 14 (hereinafter, "the PSR Affidavit").) Counsel decided that he could not "join [those] objections" and concluded that Petitioner qualified as an Armed Career Criminal. (Docket Entry 13 at 1 (citing, inter alia, Massachusetts convictions for assault and battery with a dangerous weapon (on two occasions) and assault with a dangerous weapon (on a third occasion)).) In deference to Petitioner, however, counsel summarized Petitioner's objections for the Court and submitted the PSR Affidavit. (See id. at 2-4 (discussing Docket Entry 14).)

In the PSR Affidavit, Petitioner declared: "May the record show: That I have only 2 predicate [sic] accordingly [sic] to the Simmon's [sic] law and terms in prison." (Docket Entry 14 at 6; see also Docket Entry 13 at 3 ("[Petitioner] contends that United States v. Simmons, 649 F.3d (4th Cir. 2011) applies to many of his convictions and that he does not have three predicates under the ACCA.").) To support that declaration, Petitioner never denied having accrued the convictions attributed to him in the PSR. (See Docket Entry 14 at 1-9.) The PSR Affidavit, however, does refer (including by PSR paragraph number and/or state case number) to Petitioner's Massachusetts convictions for possession with intent to distribute a class B controlled substance, assault and battery with a dangerous weapon, and assault with a dangerous weapon (i.e., the convictions on which the Court ultimately relied to impose an ACCA sentence (see Docket Entry 32 at 19-22)); of particular note, the PSR Affidavit asserts that:

1) Petitioner "never use[d] a weapon" during the offense conduct that resulted in his two assault and battery with a dangerous weapon convictions and his assault with a dangerous weapon conviction (Docket Entry 14 at 1);

2) the sentence for one of the assault and battery with a dangerous weapon convictions "was ran [sic] concurrent with" the sentence for one of the possession with intent to distribute a class B controlled substance convictions and Petitioner's "prison

12

record will show [he] did 11 months & 3 wks for these charges all together" (id. at 2; accord id. at 4, 7-8); and

3) as to the other assault and battery with a dangerous weapon conviction (which involved two counts of said offense, along with one count of assault and battery, all committed on the same occasion, and thus counted as but one prior conviction for ACCA purposes (see Docket Entry 50 at 19)), his "prison record [would show] no time serve[d]" (Docket Entry 14 at 3) and/or that he "did 19 1/2 months" (as a result of a probation revocation) on that conviction, as well as on his separate assault with a dangerous weapon conviction (which involved two counts of said offense, committed on the same occasion, and thus counted as but one prior conviction for ACCA purposes (see Docket Entry 50 at 20)) and one of his possession with intent to distribute a class B controlled substance convictions (Docket Entry 14 at 3-4; accord id. at 8-9).

Petitioner thereafter personally filed (via mail sent directly from his place of detention to the Clerk (see Docket Entry 20-1)) his "**2nd** Pro Se Position & Objection to the [PSR] & Its Sentencing Recommendation under the [ACCA]" (Docket Entry 20 (bold emphasis added)). By labeling said document in that fashion (i.e., "2nd Pro Se Position & Objection to the [PSR]"), Petitioner clearly manifested his understanding that his earlier pro se objections (set forth in the PSR Affidavit) had been filed with the Court. Moreover, Petitioner expressed no objection to such filing of the

13

PSR Affidavit. (See id.) Instead, Petitioner simply offered more objections, including (in pertinent part) to the use of the Massachusetts convictions for assault and battery with a dangerous weapon and for assault with a dangerous weapon as ACCA predicates, because of the absence of state court judgments (and the reliance by the Probation Office and/or the United States on docket sheets and/or arrest photographs from a later time period) to establish those convictions. (See Docket Entry 20 at 1-2, 4.)[6]

At Petitioner's sentencing, the United States introduced six certified Massachusetts docket sheets to establish Petitioner's convictions for possession with intent to distribute a class B controlled substance (on three occasions), assault and battery with a dangerous weapon (on two other occasions), and assault with a dangerous weapon (on yet another occasion). (See Docket Entry 32 at 2 (introducing Government Exhibits 2 through 7).) Petitioner's counsel then elaborated on Petitioner's objection to the Court's acceptance of those docket sheets as proof of prior convictions for purposes of the ACCA, including on the ground that "[s]ometimes the name is spelled differently. Sometimes the date of birth is different . . . ." (Id. at 4-6.)

---

[6] Consistent with Petitioner's expressed wishes (see Docket Entry 19-1 at 1), his counsel also made a further filing, summarizing Petitioner's second round of objections (Docket Entry 19) and attaching a slightly revised version of Petitioner's "2nd Pro Se Position & Objection to the [PSR] & Its Sentencing Recommendation under the [ACCA]" (Docket Entry 19-1 at 2-7).

14

The Court (per Chief Judge Osteen) subsequently observed that "there is only one [docket sheet] . . . that may arguably have an incorrect date of birth listed on there, and that's Government's Exhibit 5 [documenting convictions for two counts of assault and battery with a dangerous weapon, as well as one count of assault and battery, all with 'DATE OF OFFENSE(S)' of 'on or about 7/4/98,' which] has [a 'DEFT DOB' of] 12/25/65 [rather than Petitioner's actual birth date of 12/21/65], and [also] has the name misspelled [as Coley Homen rather than Coley Holman] . . . ." (Id. at 6.) When asked "[h]ow [the Court could] identify [Petitioner] as the Defendant in Government's Exhibit 5, when [that docket sheet has] an incorrect . . . birth date, and the name is [mis]spelled" (id. at 8), the United States first responded that Exhibit 5 listed the defendant's address as "32 Burns Street, Fa[ll] River, Massachusetts, which is consistent with Government's Exhibit 7 [documenting a conviction for possession with intent to distribute a class B controlled substance with an offense date of "on or about 8/7/99"], which [identifies the defendant as] Coley Holman, 32 Burns Street, [Fall River, Massachusetts, with] a 12-21-65 date of birth" (id.; see also id. (noting that Government Exhibit 6, documenting convictions for two counts of assault with a dangerous weapon committed "on or about 8/5/98," similarly named the defendant as "Coley Homen Jr." with an address of "32 Burns St., Fall River, Ma," but with a date of birth of "12/21/65")).

15

The United States thereafter argued that Petitioner's PSR Affidavit admitted that he sustained the convictions in Government Exhibit 3 (showing a conviction for "Coley Terrance Holman, Jr." for possession with intent to distribute a class B controlled substance, committed on October 20, 1995), and Government Exhibit 7 (showing a conviction for "Coley Holman" for possession with intent to distribute a class B controlled substance, committed on August 7, 1999). (See id. at 9-11.) The United States also responded affirmatively when asked if it also contended Petitioner had admitted to the convictions in Government Exhibit 5 (showing a conviction for "Coley Homen" on two counts of assault and battery with a dangerous weapon and another count of assault and battery, all committed on July 4, 1998), and Government Exhibit 6 (showing a conviction for "Coley Homen Jr." on two counts of assault with a dangerous weapon, committed on August 5, 1998). (See id. at 12.)[7]

The Court next engaged Petitioner in a colloquy, wherein he initially complained that, "[w]hen [he] made [his PSR] objections,

---

[7] As shown above, the PSR Affidavit indeed does effectively concede that Petitioner sustained convictions for assault and battery with a dangerous weapon (on two occasions) and assault with a dangerous weapon (on a third occasion) as well as at least two convictions for possession with intent to distribute a class B controlled substance (on other separate occasions), in the course of arguing that those convictions should not count as ACCA predicates because he did not actually use a dangerous weapon in the assault-related offenses, he served less than a year in prison for certain offenses, and/or he received concurrent revocation sentences for various offenses. (See Docket Entry 14 at 1-4, 8-9.)

16

[he] didn't know what [he] was doing" (id. at 13), but subsequently admitted that the PSR Affidavit contained his truthful objections (see id. at 13-17). At that point, this exchange took place:

> THE COURT: Then what is your objection [to the PSR review process]?
>
> [PETITIONER]: My objection is, I didn't understand it when I did -- I just did it to the best of my ability. I wish me and [my counsel] had gone over [the PSR] together and he could of showed me how to do it.
>
> THE COURT: So he could have showed you how to do it so you wouldn't tell the truth?
>
> [PETITIONER]: No. I was going to tell the truth.
>
> THE COURT: And that's what you did, right?
>
> [PETITIONER]: Right.
>
> THE COURT: So what's the problem? You told the truth.
>
> [PETITIONER]: But [the United States is] saying that I . . . admitted about some of the cases that I did the time, which -- I didn't quite understand it when I was going over it. I just did it to the best of my ability.
>
> THE COURT: Some of your objections you gave to [counsel] and asked him to file with the Court, didn't you?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: Number one, the two of you went over the [PSR]. Number two, you wrote the truth in your objections and, number three, you asked him to file them with the Court. Right?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: All right. Anything further, [Petitioner]?
>
> [PETITIONER]: No, sir.

(Id. at 18-19.)

17

Having clarified that matter, the Court ruled as follows:

I will adopt the [PSR] without amendment. . . . [W]ith respect to the use of a criminal docket sheet, . . . I find under what appears to me to be the established law of the First Circuit as well as elsewhere, including the case cited by the Government with respect to the Fourth Circuit, that the use of a docket sheet is an appropriate court record which may be used to determine a defendant's prior criminal record.

. . . .

I find with respect to Government's Exhibit 2, that at least as I understand Massachusetts law and the statutory law applicable in the State of Massachusetts, that possession of a class B controlled substance with intent to distribute does constitute [an ACCA] predicate offense . . . .

The same is true with respect to Government's Exhibit 3. Government's Exhibit 4, according to the docket sheet is the offense of assault and battery by a dangerous weapon under Massachusetts law. The Defendant identified in that offense is Coley T. Holman. The date of birth is 12/21/65, a male defendant with a date of birth of 12/21/65. Same is true for Government's Exhibits 2 and 3, and I, therefore, find that those offenses are qualifying predicate prior convictions under what appears to me to be . . . clearly established Massachusetts law.

. . . .

The same is true with respect to Government's Exhibits 5 and 6, which with five, six and seven, with respect to the nature of the offense, regardless of the Court's findings with respect to those three offenses, I think the other offenses establish the three prior predicates necessary for application -- to require application of the ACCA penalties, but I will also find that Government's Exhibits 5, 6 and 7, constitute qualifying offenses, that is assault and battery by a dangerous weapon as set forth in Government's Exhibit 5, assault by a dangerous weapon under Government's Exhibit 6, and possession of class B substances with intent to distribute, as set forth under Government's Exhibit 7. I'm not sure under other circumstances I would be

18

> inclined to accept standing alone an argument that [the
> incorrect birth-date in Government Exhibit 5] should be
> found to be a typographical error, especially considering
> the issues with respect to the name and other matters
> . . . .
>
> [However, Petitioner's] admission[s] as contained in [the
> PSR Affidavit] . . . serve to establish those additional
> three prior convictions, although even if they were not
> considered, the other convictions . . . establish the
> application of those penalties, so I will adopt the [PSR]
> without change.

(Id. at 19-22.)

The foregoing record forecloses any finding that Petitioner's counsel acted in a professionally unreasonable manner by filing the PSR Affidavit. Indeed, as quoted above, Petitioner acknowledged at sentencing that he asked his counsel to file the PSR Affidavit (or, at minimum, the objections stated in the PSR Affidavit). (See id. at 18.) Moreover, Petitioner's contemporaneous conduct corroborates that acknowledgment; for example, by swearing to the PSR Affidavit before a notary (see Docket Entry 14 at 9), denominating a later document as his "2nd Pro Se Position & Objection to the [PSR]" (Docket Entry 20 at 1), omitting from that document any complaint about the filing of the PSR Affidavit (see id. at 1-8), mailing his "2nd Pro Se Position & Objection to the [PSR]" directly to the Court (see Docket Entry 20-1), and explicitly directing his counsel (in writing) to file an updated version of "2nd Pro Se Position & Objection to the [PSR]" (see Docket Entry 19-1 at 1) (which document again contained no

19

protestation about the filing of the PSR Affidavit (see Docket Entry 19-1 at 2-7)), Petitioner manifested his desire that the Court view and consider the PSR Affidavit, as well as his "2nd Pro Se Position & Objection to the [PSR]."

Petitioner eschewed any discussion of these matters of record (or, in fact, any material aspect of this sub-claim) in arguing Ground One. (See Docket Entry 40 at 50-53; Docket Entry 47 at 2.) Moreover, Petitioner's Section 2255 Affidavit asserts only that, "[a]t no time did [Petitioner] instruct [his counsel] to file [Petitioner's] objections in [Petitioner's] handwriting." (Id. at 14 (emphasis added).) In other words, Petitioner's Section 2255 Affidavit does not deny that he instructed his counsel to file the substance of the objections set forth in the PSR Affidavit; instead, Petitioner's Section 2255 Affidavit merely denies instructing his counsel to file those objections in the hand-written form that Petitioner delivered them to his counsel.[8] The

_____

[8] The Court should view even that limited averment with a healthy degree of skepticism, as Petitioner did not explain why he went to the trouble of having the PSR Affidavit notarized, if he never intended it to come before the Court in that very form. (See Docket Entry 40 at 14, 50-53; Docket Entry 47 at 2; see also Docket Entry 44-1 at 4 ("[I]n his [Section 2255 A]ffidavit, [Petitioner] alleges that after his guilty plea, upon review of his PSR, that he did not tell me to file his handwritten objections. I deny this allegation. [Petitioner] directed that his handwritten objections to the PSR be submitted to the district court. I did as he instructed."), 5-6 ("[Petitioner] directed me to file his handwritten objections to the PSR. I had told him that the matters he wanted to be raised were not based in fact or law, so I could
(continued...)

20

inference, fairly drawn by the Court (per Chief Judge Osteen) at sentencing, that Petitioner had admitted the fact of his convictions for the offenses documented in Government's Exhibits 5 and 6, however, arose not because of the hand-written form of the objections in the PSR Affidavit, but because of the substance of the objections in the PSR Affidavit (i.e., that Petitioner had not actually used a dangerous weapon in connection with those assault and battery with a dangerous weapon and assault with a dangerous weapon offenses, that he served less than a year in prison for one of those offenses (as well as for one of the possession with intent to distribute a class B controlled substance offenses), and that he received concurrent revocation sentences for certain offenses).[9]

Given these circumstances, Petitioner's counsel acted well-within the bounds of reasonable representation by filing the PSR Affidavit, as this simple thought-experiment illustrates: What could (and, with little doubt, would) Petitioner now have said, if

_____

[8](...continued)
not assert them. He wanted the Court to consider his matters, so I did what he directed.").) Nonetheless, for reasons shown in the discussion that follows in the remainder of Part II.A.ii., even accepting the above-quoted representation in Petitioner's Section 2255 Affidavit, this ineffectiveness sub-claim falls short.

[9] Put another way, whether presented as an objection in his own hand-writing or otherwise, Petitioner could not deny using a dangerous weapon in connection with an offense of conviction, serving a specific amount of time for a conviction, and/or receiving a particular revocation sentence for various convictions, without admitting that he had, in fact, sustained such convictions.

his counsel had <u>not</u> filed the PSR Affidavit? Petitioner could (and, nigh surely, would) have argued that his counsel acted unprofessionally <u>by failing to submit the PSR Affidavit</u> to the Court. <u>See, e.g.</u>, <u>Jackson v. United States</u>, Nos. 3:13CR258-RJC-10, 3:16CV81-RJC, 2016 4490712, at *3 (W.D.N.C. Aug. 25, 2016) (unpublished) ("In his final claim, [the p]etitioner argues that his counsel was ineffective in failing to present his objections to the PSR . . . ."). The Court should not find deficient performance in scenarios of this sort (where a defendant can claim ineffective assistance no matter which of two available options the defense attorney takes), because such a finding essentially renders defense attorneys "*Strickland* damned if they don't, but also if they do." <u>Gray v. Klauser</u>, 282 F.3d 633, 662 (9th Cir.) (Trott, J., concurring in part and dissenting in part) (dissenting from panel ruling directing district court to grant habeas relief), <u>judg't vacated</u>, 537 U.S. 1041 (2002), <u>aff'g denial of habeas relief on remand</u>, 86 F. App'x 279 (9th Cir. 2004).

Alternatively, Petitioner cannot show prejudice stemming from the filing of the PSR Affidavit, because (even without such filing) the result of the proceeding (i.e., Petitioner's designation as an Armed Career Criminal) would have remained unchanged. As the Court stated at sentencing, "there is only one [docket sheet with] . . . an incorrect date of birth listed on there, and that's Government's Exhibit 5 . . . ." (Docket Entry 32 at 6.) Further,

as detailed above, only Government Exhibits 5 and 6 contain misspellings of Petitioner's name. (See id. at 12.) Assuming that, absent the admissions inherent in the PSR Affidavit, the Court would not have found Petitioner adequately identified as the defendant in Government Exhibit 5 (convicted of two counts of assault and battery with a dangerous weapon committed on July 4, 1998) and Government Exhibit 6 (convicted of two counts of assault with a dangerous weapon committed on August 5, 1998), Petitioner nevertheless would have received an ACCA sentence, due to the convictions established by Government Exhibit 2 (for possession with intent to distribute a class B controlled substance committed on July 28, 1994), Government Exhibit 3 (for possession with intent to distribute a class B controlled substance committed on October 20, 1995), Government Exhibit 4 (for assault and battery with a dangerous weapon committed on February 29, 1996), and Government Exhibit 7 (for possession with intent to distribute a class B controlled substance committed on August 7, 1999). (See generally id. at 19-22.) That conclusion precludes a finding of prejudice. See Galloway, 749 F.3d at 241.

In sum, Petitioner's sub-claim of ineffective assistance related to the filing of the PSR Affidavit lacks merit.

### iii. Assuring Petitioner the ACCA Would Not Apply

The third (and final) instance of ineffectiveness specified in relation to Ground One concerns the allegation that, in advising

Petitioner to plead guilty, counsel offered an "assurance [Petitioner] would not qualify for the [ACCA] . . . ." (Docket Entry 40 at 50.)  In support of that allegation, Petitioner cited (see id.) and attached a letter he received from his counsel (id. at 90-91).  That letter, however, contains no "assurance [Petitioner] would not qualify for the [ACCA]" (id. at 50); rather, the letter merely relates counsel's "opinion" that, based on a review of the records pertaining to Petitioner's North Carolina convictions in the files of "the Clerk of Court for Alamance County," Petitioner "will not be subject to the ACCA," before explaining that counsel "cannot promise that somewhere out there [the] Probation [Office] won't find any more predicates" and fully advising Petitioner "about possible punishments, if [he] were found to be subject to the ACCA" (id. at 91 (emphasis in original)).

Likewise, Petitioner's Plea Agreement contains no "assurance" of exemption from the ACCA.  (See Docket Entry 11.)  Instead, it expressly confirms his understanding of the possible penalties he may face under the ACCA (id. at 2), his voluntary decision to plead guilty "because he [wa]s, in fact, guilty and not because of any threats or promises" (id. at 4 (emphasis added)), and his acknowledgment that "[n]o agreements, representations, or understandings have been made between the parties in this case other than those which are explicitly set forth in this Plea

24

Agreement, and none will be entered into unless executed in writing and signed by all the parties" (id. at 5-6).

Of further significance, during the plea hearing (and after taking an oath (see Docket Entry 35 at 5)), Petitioner:

1) averred that he understood his Plea Agreement and that it "contain[ed] all the terms and conditions of [his] agreement with the United States" (see id. at 9);

2) conceded that he knew the Court would "have the opportunity to review [his] criminal record and . . . should [the Court] make a determination that [he] ha[d] three prior convictions in any court for separately occurring violent felonies or serious drug offenses" he would face a "term of imprisonment of not less than 15 years or more than life" (id. at 11-12 (emphasis added)); and

3) acknowledged that his "sentence may be different from any estimate [his counsel] has provided" (id. at 14).

Following Petitioner's guilty plea, the Probation Office prepared a PSR that included a determination that, based on his record, the ACCA applied. (See Docket Entry 50 at 37 (discussing original PSR).) Petitioner reviewed the PSR and personally prepared the PSR Affidavit outlining objections to the ACCA determination, but did not allege therein that his counsel had made any "assurance" regarding the inapplicability of the ACCA. (See Docket Entry 14.) Subsequently, Petitioner appeared before and directly addressed the Court in connection with a request for

substitute counsel, but never voiced any contention that his counsel had offered an "assurance" that he did not qualify for an ACCA sentence. (See Docket Entry 36 at 2-11, 14.) Petitioner thereafter personally filed more objections to sentencing under the ACCA, but again without alleging that his counsel ever gave him an "assurance" that the Court would not find that his record satisfied the terms of the ACCA. (See Docket Entry 20.) Similarly, in a letter to counsel about ACCA eligibility, Petitioner did not mention any such "assurance." (See Docket Entry 19-1 at 1.) Lastly, at sentencing, Petitioner spoke to the Court on multiple, extended occasions, but (once more) failed to contend that he received an "assurance" from his counsel that the ACCA would not apply. (See Docket Entry 32 at 13-19, 27-29.)

The foregoing circumstances conclusively establish the meritlessness of Petitioner's third sub-claim within Ground One, as a neighboring court well-explained in an analogous situation:

> [The p]etitioner alleges that his trial counsel was ineffective because she told him that the armed career criminal enhancement would not apply to him . . . .
>
> At a minimum, [the p]etitioner's claim fails because he cannot establish that he was prejudiced. The record supports the conclusion that [the p]etitioner was aware of the possibility that he could be sentenced to a term of imprisonment greater than ten years. [The p]etitioner's plea agreement, which he signed, contained a specific provision which stated that he could be subject to a maximum sentence of life imprisonment if it was determined that he had three previous convictions for violent felonies or serious drug offenses, i.e., an armed career criminal. [The p]etitioner's plea agreement also

26

> stated that the 'defendant is further aware that the
> [c]ourt has not yet determined the sentence, that any
> estimate from any source, including defense counsel, of
> the likely sentence is a prediction rather than a
> promise, and that the Court has the final discretion to
> impose any sentence up to the statutory maximum for each
> count.' At his plea hearing . . ., [the p]etitioner was
> specifically informed, and he stated under oath that he
> understood, that if he had three prior convictions for
> violent felonies or serious drug offenses, he would be
> subject to a minimum term of 180 months imprisonment.
> [The p]etitioner also stated under oath that his guilty
> plea was not the result of any promises other than those
> contained in the plea agreement. Therefore, even if [the
> p]etitioner's counsel advised him that he would not be
> classified as an armed career criminal as he alleges,
> [the p]etitioner cannot show that he was prejudiced based
> upon this record as highlighted above.
>
> . . . At sentencing, counsel argued that even though
> [the p]etitioner had the prior felony convictions, he did
> not deserve a sentence in excess of 180 months.
> Immediately after counsel's exchange with the [c]ourt,
> the [p]etitioner was afforded the opportunity to address
> the [c]ourt. If [the p]etitioner was surprised by
> counsel's argument to the [c]ourt that he was being
> considered for a sentence at or in excess of 180 months,
> he did not advise the [c]ourt. Instead, [the p]etitioner
> addressed the [c]ourt, apologized for his conduct, and
> asked the [c]ourt for 'as light a sentence as you can.'
> [The p]etitioner's reaction at sentencing contradicts his
> present allegations that he was unaware of the armed
> career criminal enhancement.

Hughes v. United States, Nos. 1:05CR273, 1:08CV539-1-T, 2009 WL

116977, at *2-3 (W.D.N.C. Jan. 16, 2009) (unpublished) (internal

citations and footnote omitted). Because the record demonstrates

that Petitioner pleaded guilty with full knowledge that he faced

the prospect of sentencing under the ACCA, the Court likewise

should reject this ineffective assistance sub-claim.

In the alternative, because Petitioner has alleged plea-related ineffectiveness, "to satisfy [Strickland's] 'prejudice' requirement, [he] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner, however, has not even alleged (much less shown) that he would have gone to trial, absent the supposed "assurance" by his counsel about the ACCA. (See Docket Entry 40 at 14 ("Section 2255 Affidavit"), 16-18 ("Introduction" and "Facts Pertinent to [Petitioner's] Section 2255"), 50-53 ("Ground One"); Docket Entry 47 at 2 (discussing Ground One).) Indeed, the "Conclusion" of Petitioner's Section 2255 Motion conspicuously omits any request that the Court strike his guilty plea and allow him to proceed to trial; instead, it asks only "that the Court find the ACCA inapplicable, vacate his sentence, and resentence under the appropriate guideline range with a statutory ceiling of ten (10) years." (Id. at 88.) The Court thus should deny this Ground One sub-claim pursuant to Hill as well.

B. Ground Two: Appellate Ineffective Assistance

Ground Two alleges that Petitioner's counsel performed ineffectively on appeal by failing to pursue three arguments: (i) that Alleyne overruled the holding in Almendarez-Torres authorizing enhanced statutory penalties based on judicial findings as to prior convictions; (ii) that Descamps foreclosed use of Petitioner's

28

Massachusetts assault and battery with a dangerous weapon and assault with a dangerous weapon convictions as ACCA predicates; and (iii) that Petitioner's ACCA sentence contravenes the Eighth Amendment. (See Docket Entry 40 at 54-60.)[10] Those three sub-claims of appellate ineffectiveness do not warrant any relief.

### i. Alleyne

According to Petitioner, his counsel should have argued on appeal that Alleyne abrogated Almendarez-Torres and invalidated ACCA sentences (such as his) that involved judicial fact-finding as to prior convictions. (See id. at 56-58.) This appellate ineffectiveness sub-claim fails as an initial matter because (as explained by the United States) "[t]he Fourth Circuit issued its decision affirming [Petitioner's] sentence on May 9, 2013. Alleyne was decided by the Supreme Court on June 17, 2013 . . . . It was

---

[10] To the extent Petitioner based Ground Two on the handling of his certiorari petition (see Docket Entry 40 at 54 (describing Ground Two as encompassing claim that "certiorari attorney . . . failed to provide effective assistance of counsel where percolating cases in the Supreme Court where [sic] ripe for discussion"), the Court should deny relief, because "[t]he Supreme Court held in Ross v. Moffitt, 417 U.S. 600, 617 (1974), that a criminal defendant has no constitutional right to counsel to pursue a petition for a writ of certiorari. And where there is no constitutional right to counsel, there cannot be constitutionally ineffective assistance of counsel." Wyatt v. United States, 574 F.3d 455, 459 (7th Cir. 2009) (internal parallel citations omitted); accord Nichols v. United States, 563 F.3d 240, 248-50 (6th Cir. 2009); Steele v. United States, 518 F.3d 986, 988 (8th Cir. 2008); Derman v. United States, 298 F.3d 34, 45 n.7 (1st Cir. 2002); Lopez-Vera v. United States, Nos. 1:09CR226, 1:12CV55, 2015 WL1717836, at *8 (M.D.N.C. Apr. 15, 2015) (unpublished) (Schroeder, J.).

therefore impossible for [Petitioner's counsel] to argue [*Alleyne*] during [Petitioner's] appeal since [*Alleyne*] had not been decided." (Docket Entry 44 at 8-9.)[11]

Alternatively, the Fourth Circuit has reiterated after *Alleyne* that "[t]he *Almendarez-Torres* opinion remains authoritative." United States v. Doe, 593 F. App'x 247, 248 (4th Cir. 2015) (citing United States v. McDowell, 745 F.3d 115, 124 (4th Cir. 2014), cert. denied, ___ U.S. ___, 135 S. Ct. 942 (2015), and United States v. Graham, 711 F.3d 445, 455 n.8 (4th Cir. 2013)).  Indeed, *Alleyne* states:  "Because the parties do not contest [Almendarez-Torres's]

---

[11] Petitioner's Reply counters that "had [counsel] petitioned for rehearing the appeal would have straddled [the decision in] Alleyne . . . ."  (Docket Entry 47 at 2.)  However, "the Supreme Court has held that there is no constitutional right to counsel for a discretionary appeal. . . .  [A] petition for rehearing or rehearing en banc is a discretionary appeal and thus there is no constitutional right to counsel to pursue a petition for rehearing." White v. United States, No. 7:08CR54, 2013 WL 1497579, at *3 (W.D. Va. Apr. 11, 2013) (unpublished) (citing Wainwright v. Torna, 455 U.S. 586, 586-87 (1982)), appeal dismissed, 536 F. App'x 339 (4th Cir. 2013); accord Thomas v. United States, Crim. Action No. RDB-10-491, Civ. Action No. RDB-14-2085, 2016 WL 5372316, at *9 (D. Md. Sept. 26, 2016) (unpublished); Nesbitt v. United States, Nos. 2:08CR1153DCN, 2:14CV4503DCN, 2016 WL 3059859, at *13 (D.S.C. May 31, 2016) (unpublished); Smith v. United States, Nos. 7:07CR101BR1, 7:11CV229BR, 2013 WL 1962311, at *3 (E.D.N.C. May 10, 2013) (unpublished); see also United States v. Taylor, 614 F.3d 528, 537 (4th Cir. 2005) (observing that "a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction").  The Court therefore cannot grant collateral relief for any failure to seek rehearing based on Alleyne, because "where no Sixth Amendment right to counsel attaches to the proceeding, an ineffective assistance claim cannot be sustained." United States v. MacDonald, 966 F.2d 854, 859 n.9 (4th Cir. 1992).

vitality, we do not revisit it for purposes of our decision today."
_Alleyne_, ___ U.S. at ___ n.1, 133 S. Ct. at 2160 n.1 (internal
citation omitted).  Put another way, "because _Alleyne_ did not
disturb _Almendarez-Torres_, which authorizes a district court to
apply an enhanced sentence based upon its finding of applicable
prior convictions, [Petitioner's envisioned] challenge must fail."
United States v. Croft, 533 F. App'x 187, 188 (4th Cir. 2013)
(internal citation omitted); see also McDowell, 745 F.3d at 124
(stating, in wake of _Alleyne_, that "_Almendarez-Torres_ remains good
law, and we may not disregard it unless and until the Supreme Court
holds to the contrary").  As a result, Petitioner cannot make out
a claim that his counsel performed ineffectively by refraining from
litigating such an argument on appeal.  See Oken, 220 F.3d at 269
("[C]ounsel [i]s not constitutionally ineffective in failing to
[act if] . . . it would have been futile for counsel to have done
so . . . ."); Carter v. Lee, No. 99-10, 202 F.3d 257 (table), 1999
WL 1267353, at *11 (4th Cir. Dec. 29, 1999) (unpublished)
("Appellate counsel [is] not ineffective for failing to raise [an
issue] on appeal [that] is plainly without merit.").

## ii.  Descamps

Petitioner's second sub-claim of appellate ineffective
assistance faults his counsel for neglecting to litigate whether
Descamps precludes treatment of Petitioner's Massachusetts assault

31

and battery with a dangerous weapon and/or assault with a dangerous weapon convictions as violent felonies under the ACCA. (See Docket Entry 40 at 58-59.) The Court should deny relief on this sub-claim because (1) the Supreme Court decided Descamps after the Fourth Circuit affirmed Petitioner's sentence, (2) the Massachusetts assault-related convictions at issue remain violent felonies under the ACCA after Descamps, and (3) Petitioner qualifies as an Armed Career Criminal without considering those convictions.

The Fourth Circuit affirmed Petitioner's sentence on May 9, 2013. Holman, 521 F. App'x at 162. The Supreme Court issued Descamps on June 20, 2013. Descamps, ___ U.S. at ___, 133 S. Ct. at 2276. The United States thus correctly has noted that counsel could not have "argue[d] [Descamps] during [Petitioner's] appeal since [Descamps] had not been decided." (Docket Entry 44 at 8-9.)[12]

_____

[12] Petitioner nonetheless would have the Court find constitutional ineffectiveness because "had [counsel] petitioned for rehearing the appeal would have straddled . . . [the decision in] Descamps." (Docket Entry 47 at 2.) That approach falls flat, however, as "the Supreme Court has held that there is no constitutional right to counsel for a discretionary appeal. . . . [A] petition for rehearing or rehearing en banc is a discretionary appeal and thus there is no constitutional right to counsel to pursue a petition for rehearing." White v. United States, No. 7:08CR54, 2013 WL 1497579, at *3 (W.D. Va. Apr. 11, 2013) (unpublished) (citing Wainwright v. Torna, 455 U.S. 586, 586-87 (1982)), appeal dismissed, 536 F. App'x 339 (4th Cir. 2013); accord Thomas v. United States, Crim. Action No. RDB-10-491, Civ. Action No. RDB-14-2085, 2016 WL 5372316, at *9 (D. Md. Sept. 26, 2016) (unpublished); Nesbitt v. United States, Nos. 2:08CR1153DCN, 2:14CV4503DCN, 2016 WL 3059859, at *13 (D.S.C. May 31, 2016) (unpublished); Smith v. United States, Nos. 7:07CR101BR1, 
(continued...)

In any event, Descamps did not affect the validity as ACCA predicates of Petitioner's Massachusetts convictions for assault and battery with a dangerous weapon and assault with a dangerous weapon (a fact that mooted a Descamps-based appeal and defeats this ineffectiveness sub-claim, see Oken, 220 F.3d at 269; Carter, 1999 WL 1267353, at *11). In that regard, Descamps merely "reiterated the elements-centric approach for determining whether a prior conviction constitutes a [violent felony under the ACCA]." United States v. Rosas-Rosas, 547 F. App'x 271, 272 (4th Cir. 2013). Moreover, the United States Court of Appeals for the First Circuit (i.e., the circuit encompassing Massachusetts) recently applied the approach required by Descamps to the Massachusetts offense of assault with a dangerous weapon. See United States v. Hudson, 823 F.3d 11, 15-16 & n.6 (1st Cir. 2016), petition for cert. filed, No. 16-5568 (U.S. Aug. 15, 2016). Upon doing so, the court "reaffirm[ed] that a Massachusetts ADW [assault with a dangerous weapon] conviction meets the physical force requirement under the force clause of the ACCA['s violent felony definition]." Id. at 16

---

[12](...continued)
7:11CV229BR, 2013 WL 1962311, at *3 (E.D.N.C. May 10, 2013) (unpublished); see also United States v. Taylor, 614 F.3d 528, 537 (4th Cir. 2005) (observing that "a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction"). Concomitantly, "where no Sixth Amendment right to counsel attaches to the proceeding, an ineffective assistance claim cannot be sustained." United States v. MacDonald, 966 F.2d 854, 859 n.9 (4th Cir. 1992).

(declining to revisit holding in United States v. Whindleton, 797
F.3d 105 (1st Cir. 2015), that "ADW can be a violent felony under
the force clause, even if simple assault is not, by virtue of the
additional dangerous weapon element," id. at 115-16 (internal
brackets omitted)); see also Hudson, 823 F.3d at 17-18 ("[T]he
central aspect of an assault is an attempted application of
physical force or a threat of the use of physical force, either by
an attempt to do bodily harm, or by placing the victim in fear of
imminent bodily harm.  This framework, coupled with the additional
dangerous-weapon element, places a Massachusetts ADW conviction
within the language of § 924(e)(2)(B)(i)." (internal citations and
quotation marks omitted)).

Petitioner's "Massachusetts conviction[s] for assault and
battery with a dangerous weapon also qualif[y] categorically as []
predicate violent felon[ies] under the ACCA's force clause."
United States v. Murdock, Nos. 2:11CR08DBH, 2:14CV205DBH, 2016 WL
910153, at *3 (D. Me. Mar. 9, 2016) (unpublished) (citing
Whindleton).  Indeed, "dicta in *Johnson[ v. United States*, 559 U.S.
133 (2010),] assumed that an assault and battery with a dangerous
weapon was a 'violent felony.'  The Supreme Court . . . quoted
Black's definition of 'violent felony' as 'a crime characterized by
extreme physical force, such as . . . assault and battery with a
dangerous weapon.'"  Whindleton, 797 F.3d at 116 (quoting Johnson,

34

559 U.S. at 140-41) (omission of quotation marks from <u>Johnson</u> as appearing in <u>Whindleton</u>) (internal brackets omitted).[13]

Finally, for reasons discussed in Part II.C.ii. and Subsection III.B., Petitioner's Massachusetts convictions for possession with intent to distribute a class B controlled substance (on three occasions) support his ACCA sentence. Accordingly, (1) any appellate argument that <u>Descamps</u> barred the use of Petitioner's Massachusetts assault-related convictions as ACCA predicates would

---

[13] Earlier this year, the United States Court of Appeals for the Ninth Circuit held that assault and battery with a dangerous weapon under Massachusetts law does not fall within the force clause of the ACCA's violent felony definition, because a "conviction may be predicated on a reckless act causing physical or bodily injury to another." <u>United States v. Parnell</u>, 818 F.3d 974, 981 n.5 (9th Cir. 2016). Since then, however, "[t]he Supreme Court has . . . analyz[ed] the similarly worded force clause in 18 U.S.C. § 921(a)(33)(A)(ii) which defines a misdemeanor crime of violence as one involving the 'use of physical force.'" <u>United States v. Fogg</u>, ___ F.3d ___, ___, 2016 WL 4698954, at *3 (8th Cir. 2016) (citing <u>Voisine v. United States</u>, ___ U.S. ___, 136 S. Ct. 2272 (2016)) (internal ellipsis omitted). In that case, the Supreme Court "held that crimes requiring a mental state of recklessness may qualify . . . under the force clause because 'the word "use" does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so.'" <u>Id.</u> (quoting <u>Voisine</u>, ___ U.S. at ___, 136 S. Ct. at 2279). "Reckless conduct thus constitutes a 'use' of force under the ACCA because the force clauses in 18 U.S.C. § 921(a)(33)(A)(ii) and the ACCA both define qualifying predicate offenses as those involving the 'use of physical force' against another." <u>Id.</u> (internal ellipsis omitted); <u>see also</u> <u>United States v. Howell</u>, ___ F.3d ___, ___, 2016 WL 5314661, at *8-9 (5th Cir. 2016) (discussing <u>Voisine</u> and "conclud[ing therefrom] that the mental state of recklessness may qualify as an offense that 'has as an element the use, attempted use, or threatened use of physical force against the person of another' within the meaning of § 4B1.2(a)(1) of the Guidelines").

not have affected his sentence, and (2) the absence of such an appellate argument did not result in prejudice as needed for an ineffective assistance claim.  See Galloway, 749 F.3d at 241.

### iii. Eighth Amendment

According to Petitioner's third, appellate ineffectiveness sub-claim, "as applied, the penalty imposed under the ACCA is not tolerated by the Eighth Amendment."  (Docket Entry 40 at 60.)  The Fourth Circuit, however, has held that "a fifteen-year sentence under [the] ACCA is neither disproportionate to the offense nor cruel and unusual punishment, and thus does not violate the Eighth Amendment."  United States v. Presley, 52 F.3d 64, 68 (4th Cir. 1995); accord United States v. Crittendon, 883 F.2d 326, 331 (4th Cir. 1989) ("[The defendant's] final argument, that his [15-year ACCA] sentence violates the Eighth Amendment is clearly without merit and does not warrant extended discussion."); Ward v. United States, Nos. 1:10CR208, 1:13CV168, 2016 WL 1032847, at *4 (M.D.N.C. Mar. 15, 2016) (unpublished) (Osteen, Jr., C.J.) ("[A] fifteen-year sentence, or in this case, a sentence of fifteen years and eight months, under the [ACCA] is neither disproportionate to the offense nor cruel and unusual punishment, and thus does not violate the Eighth Amendment."); see also United States v. Said, 798 F.3d 182, 197 (4th Cir. 2015) (recognizing that, with but one exception (involving a life sentence imposed for uttering a $100 bad check), "not a single defendant before the [United States] Supreme Court

36

has been successful in establishing even a threshold inference of gross disproportionality in a non-capital case" and noting that, "in Harmelin v. Michigan, 501 U.S. 957 (1991), the [United States Supreme] Court rejected an as-applied Eighth Amendment challenge to a mandatory life sentence in a cocaine possession case" (internal quotation marks and some internal citations omitted); id. at 199 (Davis, S.J., concurring) (observing that "the Constitution has remarkably little to say about severe, but non-capital, criminal punishments"). The futility of Petitioner's Eighth Amendment argument dooms any claim that his counsel acted ineffectively by failing to pursue that argument on appeal. See Oken, 220 F.3d at 269; Carter, 1999 WL 1267353, at *11.

### C. Ground Three: Descamps, Moncrieffe, and Alleyne

According to Ground Three, "[r]ecent developments from the Supreme Court establish that [Petitioner] is not an Armed Career Criminal." (Docket Entry 40, § 12(Ground Three).) Petitioner's Section 2255 Memorandum further describes three ways in which three 2013 decisions from the United States Supreme Court (Descamps, Moncrieffe, and Alleyne) purportedly invalidate his sentence under the ACCA. (See id. at 69-76.) In fact, the cited decisions do not entitle Petitioner to relief.[14]

---

[14] In restating Ground Three, Petitioner's Section 2255 Memorandum suggests that "recent Supreme Court rulings and the Fish ruling leave th[e ACCA] penalty inapplicable." (Docket Entry 40 at
(continued...)

i.  Descamps

In connection with Ground Three, Petitioner initially has asserted that, under Descamps, his "assault and battery[ with a dangerous weapon convictions] categorically cannot be used as predicates under the ACCA."  (Id. at 73; see also id. at 71-72 (discussing Descamps).)  That assertion lacks merit, as explained in Part II.B.ii.  Moreover, "Descamps is not retroactive on collateral review."  Lopez-Vera v. United States, Nos. 1:12CV55, 1:09CR226, 2015 WL 1717836, at *11 n.9 (M.D.N.C. Apr. 15, 2015) (unpublished) (Schroeder, J.); accord McDade v. United States, Nos. 5:04CR252F1, 5:13CV672F, 2016 WL 3248295, at *2 (E.D.N.C. June 9, 2016) (unpublished); Scott v. United States, Crim. No. RDB-08-34, Civ. Action No. RDB-14-1575, 2016 WL 3162766, at *3 (D. Md. June 7, 2016) (unpublished); Jackson v. Zych, No. 7:14CV321, 2016 WL 830076, at *2 n.2 (W.D. Va. Mar. 3, 2016) (unpublished); Vaughn v. United States, Nos. 5:08CR266-1, 5:13CV3292, 2016 WL 698152, at *4-

---

[14](...continued)
69 (emphasis added); see also id. at 72-73 (embedding references to United States v. Fish, 758 F.3d 1 (1st Cir. 2014), in discussion of Descamps).)  In Fish, the First Circuit "stated that a conviction under the Massachusetts ABDW [assault and battery with a dangerous weapon] statute would not qualify as a conviction of a crime of violence under the force clause of 18 U.S.C. § 16 . . . . But the discussion of the force clause in Fish was dicta . . . . Thus, Fish's holding provides no support for [Petitioner's] argument." United States v. Fields, 823 F.3d 20, 35 n.12 (1st Cir. 2016). Simply put, the Court should decline to collaterally invalidate an ACCA sentence, based on dicta from a court whose decisions do not bind this Court, regarding a statute other than the ACCA.

38

5 (S.D.W. Va. Feb. 22, 2016) (unpublished), <u>appeal dismissed</u>, No. 16-6335, 2016 WL 4527508 (4th Cir. Aug. 30, 2016) (unpublished); <u>Clyburn v. United States</u>, Crim. No. 4:05-1299-TLW, C/A No. 4:14CV2286TLW, 2016 WL 493031, at *1 (D.S.C. Feb. 9, 2016) (unpublished). As a final matter, based on authority detailed in Part II.C.ii. and Subsection III.B., Petitioner's Massachusetts convictions for possession with intent to distribute a class B controlled substance (on three occasions) provide the necessary foundation for his ACCA sentence. For all of these reasons, <u>Descamps</u> does not require the Court to re-sentence Petitioner.

ii. <u>Moncrieffe</u> (and <u>Descamps</u>)

The portion of Petitioner's Section 2255 Memorandum devoted to Ground Three next declares that his "Massachusetts drug crimes are not 'serious drug offenses' in light of <u>Moncrieffe</u> in conjunction with <u>Descamps</u>." (Docket Entry 40 at 75.) As noted in Part II.B.ii., <u>Descamps</u> simply "reiterated the elements-centric approach for determining whether a prior conviction constitutes a [violent felony under the ACCA]." <u>Rosas-Rosas</u>, 547 F. App'x at 272. Petitioner has "fail[ed] to explain how <i>Descamps</i>, which clarified how to determine whether a prior conviction is a violent felony, invalidates the use of his [drug] conviction[s as serious drug offenses]," <u>Gatson v. United States</u>, Nos. CR412-160, CV414-065, 2016 WL 2977278, at *2 (S.D. Ga. May 19, 2016) (unpublished) (internal citation omitted), <u>recommendation adopted</u>, 2016 WL

39

3276959 (S.D. Ga. June 13, 2016) (unpublished), <u>appeal filed</u>, No. 16-14940 (11th Cir. July 13, 2016). (<u>See</u> Docket Entry 40 at 75.) Further (as more exhaustively documented in Part II.C.i.), voluminous authority (including from a judge of this Court) confirms that "*Descamps* is not retroactive on collateral review." <u>Lopez-Vera</u>, 2015 WL 1717836, at *11 n.9. Accordingly, <u>Descamps</u> does not preclude the counting of Petitioner's Massachusetts convictions for possession with intent to distribute a class B controlled substance as ACCA predicates.

<u>Moncrieffe</u>, in turn, involved the same elements-focused, "categorical approach" at issue in <u>Descamps</u>, <u>see</u> <u>Moncrieffe</u>, ___ U.S. at ___, 133 S. Ct. at 1683-84 (discussing, inter alia, <u>Taylor v. United States</u>, 495 U.S. 575 (1990)); however, <u>Moncrieffe</u> did not apply that approach to resolve a dispute about whether an offense qualifies as a "serious drug offense" under the ACCA. Instead, <u>Moncrieffe</u> addressed the question of whether the term "drug trafficking crime," defined, in relevant part, as "any felony punishable under the Controlled Substances Act," 18 U.S.C. § 924(c)(2), as incorporated into the "illicit trafficking in a controlled substance" portion of the Immigration and Naturalization Act's definition of "aggravated felony," 8 U.S.C. § 1101(a)(43)(B), <u>see</u> <u>Moncrieffe</u>, ___ U.S. at ___, 133 S. Ct. at 1683-84, "includes a [Georgia] criminal statute that extends to the social sharing of a small amount of marijuana," <u>id.</u> at ___, 133 S. Ct. at 1682.

Ultimately, the Moncrieffe Court concluded that, because "the fact of a conviction for possession with intent to distribute marijuana [under Georgia law], standing alone, does not reveal whether either remuneration or more than a small amount of marijuana was involved," id. at ___, 133 S. Ct. at 1686, such a conviction could correspond to a federal misdemeanor and, "[u]nder the categorical approach, then, [it] was not [a] convict[ion] of an aggravated felony," id. at ___, 133 S. Ct. at 1687.

By contrast, the Court here ruled that Petitioner's Massachusetts convictions for possession with intent to distribute a class B controlled substance qualified as "serious drug offenses" under the ACCA. (See Docket Entry 32 at 19-22.) The ACCA defines a "serious drug offense" as including "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law[.]" 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added). Coordinately, for the offense of possession with intent to distribute a class B controlled substance offense, Massachusetts law prescribes "imprisonment in the state prison for not more than ten years, or in jail or house of correction for not more than two and one-half years, or by a fine of not less than one thousand nor more than ten thousand dollars, or both such fine and imprisonment." Mass. Gen. Laws ch.94C § 32A(a) (emphasis added).

41

In other words, "*Moncrieffe* defined aggravated felonies for drug trafficking under the Immigration and Nationality Act.  The [ACCA], however, contains its own definition of [predicate] felony drug offenses, under which Petitioner's prior convictions clearly fall.  As a result, Petitioner's reliance on *Moncrieffe* is misplaced as it offers him no relief." Ferguson v. United States, No. CV413-181, 2014 WL 808087, at *1 (S.D. Ga. Feb. 28, 2014) (unpublished) (internal citations omitted); see also United States v. Warren, 632 F. App'x 973, 975 (11th Cir. 2015) ("[The petitioner] contends that *Moncrieffe* requires us to read a remuneration requirement into the ACCA's definition of 'serious drug offense,' but it does not. *Moncrieffe* involved the meaning of 'illicit trafficking' in the Controlled Substances Act, which is not at issue in this case.  The ACCA does not use the phrase 'illicit trafficking' in defining 'serious drug offense,' and there is no obvious reason why 'illicit trafficking' and 'serious drug offense' should have the same elements, particularly when Congress employed the two different terms in different contexts." (internal citation omitted)), cert. denied, ___ U.S. ___, 136 S. Ct. 1392 (2016); Blackmon v. United States, No. 13 Civ. 6797(JSR)(KNF), 2014 WL 2751036, at *5 (S.D.N.Y. June 10, 2014) (unpublished) ("As *Moncrieffe* involved the determination of an 'aggravated felony'

42

under the INA [Immigration and Nationality Act], it is not applicable to the instant case, which does not involve the INA.").[15]

### iii. Alleyne

Lastly (as to Ground Three), Petitioner has argued that "Alleyne destroyed the already gravely wounded decision in Almendarez-Torres." (Docket Entry 40 at 76.) As shown in greater detail in Part II.B.i., the Fourth Circuit has rejected that argument. See, e.g., McDowell, 745 F.3d at 124 (ruling, after Alleyne, that "Almendarez-Torres remains good law, and we may not disregard it unless and until the Supreme Court holds to the contrary"). Additionally, "Alleyne does not apply retroactively.

---

[15] Petitioner's Section 2255 Memorandum also appears to contend that, because he did not actually receive a state prison sentence upon his convictions for possession with intent to distribute a class B controlled substance (but instead terms in a house of correction), those convictions do not meet the definition of "serious drug offense." (See Docket Entry 40 at 75.) Several courts persuasively have rejected that precise contention and have concluded that the Massachusetts offense of possession with intent to distribute a class B controlled substance categorically constitutes a "controlled substance offense" under the ACCA. See Hudson, 823 F.3d at 14-15; United States v. Weeks, 442 F. App'x 447, 454-55 (11th Cir. 2011); United States v. Sadm, No. 5:08CR21-1, 2016 WL 5081663, at *3 (W.D. Va. Sept. 14, 2016) (unpublished); see also Ware v. Dickhaut, 439 F. App'x 14, 14-15 (1st Cir. 2011) (explaining that, in construing parallel "Massachusetts Armed Career Criminal statute," Mass. Gen. Laws ch. 269 § 10G(b), Massachusetts courts have held that the Massachusetts offense of possession with intent to distribute a class B controlled substance meets the state's definition of "serious drug felony," which (like the ACCA's definition of "serious drug offense") requires an imprisonment "maximum of ten years or more," regardless of the fact that, in the case of conviction, the state opted for prosecution in a state court "where the maximum sentence he faced was only two and one-half years [in jail or a house of correction]").

43

This decision accords with that of every circuit to have examined the issue, none of which has decided that *Alleyne* is retroactive." United States v. Olvera, 775 F.3d 726, 730 (5th Cir. 2015) (citing decisions from eight circuits, including United States v. Stewart, 540 F. App'x 171, 172 n.* (4th Cir. 2013)).  The Court therefore should not set aside Petitioner's ACCA sentence based on Alleyne.

### D.  Ground Four:  Ineffective Assistance for Failing to Contest Reliance on the "Residual Clause" of the ACCA's "Violent Felony" Definition

Ground Four seeks relief because Petitioner's "attorney failed to press void for vagueness and the avoidance doctrine concerning § 924(e)."  (Docket Entry 40, § 12(Ground Four).)  Specifically (as outlined in the "Ground Four" segment of his Section 2255 Memorandum), Petitioner would have the Court deem his counsel ineffective "for failing to challenge the constitutionality of 18 U.S.C. § 924(e)'s residual clause" (id. at 82) and/or to argue "that th[e statutory construction] canon [of constitutional avoidance] prevents the residual provision from extending to [Petitioner's] alleged violent past state convictions because such determinations raise significant constitutional concern" (id. at 87).  Petitioner cannot show the requisite prejudice under Strickland as to this claim, because, if counsel had challenged the "residual clause" within the ACCA's definition of "violent felony" (on either constitutional or statutory construction grounds) and the Court had ruled in Petitioner's favor:

44

1) for reasons discussed in Part II.B.ii., Petitioner's Massachusetts convictions for assault and battery with a dangerous weapon (on two occasions) and assault with a dangerous weapon (on a third occasion) still would render him subject to sentencing under the ACCA, because they fall within the "force clause" of the "violent felony" definition, see, e.g., United States v. Priddy, 808 F.3d 676, 683 (6th Cir. 2015) (ruling that, even with the "residual clause" of the ACCA's definition of "violent felony" eliminated, "a defendant can still receive an ACCA-enhanced sentence based on the statute's use-of-force clause"); Peek v. United States, Nos. CR408-221, CV416-165, 2016 WL 4926431, at *1 n.2 (S.D. Ga. Sept. 14, 2016) (unpublished) (recognizing that, regardless of unconstitutionality of the ACCA's "residual clause," "those who have 3 or more prior convictions for . . . offenses [with] an element of the use of physical force against another, continue to face an enhanced sentence under the ACCA"); and/or

2) for reasons discussed in Part II.C.ii. and Subsection III.B., Petitioner's three Massachusetts convictions for possession with intent to distribute a class B controlled substance would remain "serious drug offense[s]" sufficient to sustain his sentence under the ACCA, see, e.g., Coleman v. United States, No. 1:16CV121SNLJ, 2016 WL 5390933, at *4 (E.D. Mo. Sept. 27, 2016) (unpublished) ("The fact that the residual clause is unconstitutionally vague does not affect the validity of

45

classification of . . . controlled substance convictions as serious drug offenses."); Johnson v. United States, Civ. Action No. RDB-13-2882, Crim. Action No. RDB-10-703, 2016 WL 560481, at *4 (D. Md. Feb. 12, 2016) (unpublished) (ruling that invalidation of "residual clause" could not provide basis for collateral relief where "[t]he [p]etitioner's qualifying prior convictions under the ACCA were 'serious drug offenses' under 18 U.S.C. § 924(e)(2)(A)(ii)").

Ground Four thus falls short as a matter of law.

### III.  MOTION TO AMEND OR SUPPLEMENT

Petitioner's instant Motion to Amend or Supplement facially "avers that relief pursuant to Johnson[ v. United States, ___ U.S. ___, 135 S. Ct. 2551 (2015),] is applicable to the prior convictions used to enhance [his] sentence."  (Docket Entry 53 at 2.)  However, said Motion to Amend or Supplement actually proposes these three new claims, only the last of which relies on Johnson:

A) "none of Petitioner's drug offenses hailing out of North Carolina should qualify for 924(e) purposes" (id. at 3 (citing United States v. Newbold, 791 F.3d 455 (4th Cir. 2015), and United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc)));

B) "Petitioner's three convictions for Felony Possession of a Class B Substance with Intent to Distribute, hailing out of Massachusetts, also do not qualify for §924(e) purposes" (id. at 3-4 (citing Carachuri-Rosendo v. Holder, 560 U.S. 563 (2010), and Simmons)); and

46

C) Petitioner's Massachusetts assault and battery with a dangerous weapon convictions "cannot stand as violent prior convictions after . . . <u>Johnson</u>" (<u>id.</u> at 5-6).

## A.  Proposed New Claim One:  Newbold and Simmons

Petitioner's Motion to Amend or Supplement first would add a claim that, in light of <u>Newbold</u> and <u>Simmons</u>, "none of [his] drug offenses hailing out of North Carolina should qualify for 924(e) purposes." (<u>Id.</u> at 3.)  For reasons outlined in Parts II.B.ii. and II.C.ii., as well as Subsections III.B. and III.C., Petitioner's ACCA sentence properly may rest on his six Massachusetts convictions for possession with intent to distribute a class B controlled substance (on three occasions), assault and battery with a dangerous weapon (on two other occasions), and assault with a dangerous weapon (on yet another occasion). As a result, the Court should not allow Petitioner to litigate his proposed collateral attack on the treatment of any North Carolina drug conviction as an ACCA predicate. <u>See generally</u> <u>United States v. Pittman</u>, 209 F.3d 314, 317 (4th Cir. 2000) (ruling that "futility" warrants denial of amendment in Section 2255 context).

## B.  Proposed New Claim Two:  Carachuri-Rosendo and Simmons

Petitioner's Motion to Amend or Supplement next proposes a claim that his "three convictions for Felony Possession of a Class B Substance with Intent to Distribute, hailing out of Massachusetts, also do not qualify for §924(e) purposes." (Docket

47

Entry 53 at 3-4.)  Enhanced sentencing under the ACCA extends to defendants with three or more convictions for a "serious drug offense," defined to include "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law[.]"  18 U.S.C. § 924(e)(2)(A)(ii).  Petitioner has acknowledged that the First Circuit recently reiterated that the Massachusetts offense of possession with intent to distribute a class B controlled substance meets that definition, as said offense carries the possibility of imprisonment for up to ten years.  (See Docket Entry 53 at 4 (quoting Hudson, 823 F.3d at 14, reaffirming United States v. Moore, 286 F.3d 47 (1st Cir. 2002)).)  However, according to Petitioner, this Court should reject the First Circuit's view on that subject (espoused by other courts as well, see United States v. Weeks, 442 F. App'x 447, 454-55 (11th Cir. 2011); United States v. Sadm, No. 5:08CR21-1, 2016 WL 5081663, at *3 (W.D. Va. Sept. 14, 2016) (unpublished)), in light of the Supreme Court's decision in Carachuri-Rosendo and the Fourth Circuit's decision in Simmons.  (See Docket Entry 53 at 4-5.) Assuming (for present purposes only) that Petitioner could overcome limitations and procedural bars to presentation of this claim, it would fail on the merits and thus the Court should deny its addition as futile.  See generally Pittman, 209 F.3d at 317.

48

In Carachuri-Rosendo, the Supreme Court considered "whether [an individual facing deportation] had been 'convicted of' a crime . . . for which the 'maximum term of imprisonment authorized' . . . exceeds one year." Simmons, 649 F.3d at 241. Although, in light of an earlier drug conviction, the individual "hypothetically could have received a two-year [prison] sentence for [his second drug conviction]," id. at 242, the Supreme Court "not[ed] that [his second drug conviction] contained 'no finding of the fact of his prior drug offense,' [and therefore] held that [he] was 'not actually convicted' of an offense punishable by a term of imprisonment exceeding one year," id. (quoting Carachuri-Rosendo, 560 U.S. at 576-77). Put another way, the Supreme Court ruled that "a recidivist finding could set the maximum term of imprisonment, but only when the finding is a part of the record of conviction." Id. at 243 (emphasis and internal quotation marks omitted).

In Simmons, the Fourth Circuit applied those teachings to reverse its prior precedent, which had held "that a North Carolina conviction is for 'a crime punishable for a term exceeding one year' if 'any defendant charged with that crime could receive a sentence of more than one year.'" Id. at 246 (quoting United States v. Harp, 406 F.3d 242, 264 (4th Cir. 2005)). Instead, the Simmons Court declared that, "when used as a predicate for federal sentencing purposes, [North Carolina law] creates separate offenses [based not only on the class of the offense of conviction, but also

49

on the presence of aggravating factors and/or a defendant's prior record] that in turn yield separate maximum punishments." Id. at 247. In that case, the defendant's prior "North Carolina conviction was for only [a] non-aggravated, first-time [Class I felony]. Accordingly, his 'offense' was not 'punishable' by a term of imprisonment exceeding one year . . . ." Id.

In contrast to the situations in Carachuri-Rosendo and Simmons, Massachusetts law does not provide for different maximum punishments for possession with intent to distribute a class B controlled substance, based on findings related to recidivism or any other aggravating factors; rather:

> That statute, like many other felony statutes in Massachusetts, provides for concurrent jurisdiction in the district and superior courts. At the discretion of the district attorney, a defendant . . . charged with possession with intent to distribute a class B substance may be prosecuted in either venue. If the defendant's case remains in the district court, then the maximum term of incarceration is two and one-half years in the house of corrections; indictment and prosecution in the superior court subjects a defendant to a maximum of ten years in state prison.

Hudson, 823 F.3d at 14. Given this distinction, the First Circuit unsurprisingly has concluded that Carachuri-Rosendo did not undermine precedent (e.g., Moore, which Hudson later again reaffirmed) treating such prior convictions as proper ACCA predicates. See United States v. Rodriquez, No. 11-1431 (1st Cir. July 16, 2012) (unpublished); see also United States v. Tomershea, No. 1:04CR72, 2012 WL 5465850, at *3 (W.D. Va. June 25, 2012)

50

(unpublished) (recognizing that "the *Simmons* analysis of the North Carolina criminal sentencing scheme has no bearing on [the treatment, for federal sentencing purposes, of prior convictions under Massachusetts law]"). This Court likewise should hold that, notwithstanding Carachuri-Rosendo and Simmons, "a Massachusetts conviction for possession with intent to distribute a class B controlled substance continues to qualify as a 'serious drug offense' under the ACCA," Hudson, 823 F.3d at 15.

### C. Proposed New Claim Three: Johnson

Petitioner's final proposed new claim alleges that his "Assault and Battery [with a Dangerous Weapon] convictions out of the state of Massachusetts cannot stand as violent prior convictions after the High Court's opinion in Johnson." (Docket Entry 53 at 5-6 (internal citation omitted).) The Court should not grant Petitioner leave to add this claim due to its futility (on at least two fronts). See generally Pittman, 209 F.3d at 317.

First, for reasons articulated in Part II.B.ii., Petitioner's Massachusetts convictions for assault and battery with a dangerous weapon (on two occasions) and for assault with a dangerous weapon (on a third occasion) meet the "force clause" portion of the definition of "violent felony" in the ACCA; accordingly, Johnson's invalidation of the "residual clause" of that definition does not alter the status of those convictions as ACCA predicates. See, e.g., United States v. Smith, 638 F. App'x 216, 218 (4th Cir.)

51

(holding that "prior convictions that fall under the 'force clause' in § 924(e)(2)(B)(i) are unaffected by *Johnson*"), <u>cert. denied</u>, ___ U.S. ___, 2016 WL 3199036 (2016); <u>Huntley v. United States</u>, No. 3:07CR243-MR-1, 3:16CV187-MR, 2016 WL 3219879, at *2 n.2 (W.D.N.C. June 7, 2016) (unpublished) ("The <u>Johnson</u> Court did not strike the remainder of the 'violent felony' definition, including the four enumerated offenses and the 'force clause' of § 924(e)(2)(B)(i). Thus, where at least three of the defendant's prior convictions satisfy the 'force clause' or otherwise qualify as one of the four enumerated offenses, no relief under <u>Johnson</u> is warranted." (internal citation omitted)).

Second, as shown in Part II.C.ii. and Subsection III.B., Petitioner's three Massachusetts convictions for possession with intent to distribute a class B controlled substance (on three occasions) constitute "serious drug offenses" capable of supporting his ACCA sentence; <u>Johnson</u>'s invalidation of the "residual clause" within the ACCA's definition of "violent felony" does not change that circumstance. <u>See, e.g.</u>, <u>United States v. Brown</u>, 637 F. App'x 90, 92 (4th Cir. 2016) ("While [the defendant] cites the recent decision in *Johnson*, that case has no impact on [his] predicate serious drug offenses . . . ." (internal citation omitted)); <u>Sadm</u>, 2016 WL 5081663, at *3 ("*Johnson* did not affect the definition of 'serious drug offenses.'").

## IV.  CONCLUSION

Petitioner's collateral claims set forth in his Section 2255 Motion and proposed in his Motion to Amend or Supplement all fail as a matter of law.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 40) and his Motion to Amend or Supplement (Docket Entry 53) be denied without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 27, 2016