IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA       )
                               )
v.                             )          1:12CR72-1
                               )
COLEY TERRANCE HOLMAN          )

## MEMORANDUM ORDER

This case is before the court on pro se Defendant Coley Terrance Holman's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 78.) The Government has responded in opposition (Doc. 82.) For the reasons stated herein, Holman's motion will be denied.

## I. BACKGROUND

On February 28, 2012, Holman was charged with a single-count indictment for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) He pled guilty and was sentenced to 186 months of imprisonment, followed by five years of supervised release. (Doc. 28.) The Fourth Circuit affirmed his conviction and sentence. (Docs. 37, 38.) Holman also filed a motion to vacate, set aside, or correct sentence, which was denied and affirmed on appeal. (Docs. 59, 63, 64.) He thereafter moved for compassionate release (Doc. 70), which was denied (Doc. 76). The present motion followed. Holman is currently incarcerated at Canaan USP and has an expected release date of February 3, 2027, based on good conduct. (Doc. 444-1); see BOP

Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Dec. 2, 2025).

## II.  ANALYSIS

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions," but prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, district courts could grant such reductions only upon a motion by the Director of the Bureau of Prisons ("BOP") pursuant to 18 U.S.C. § 3852(c)(1). United States v. Beck, 425 F. Supp. 3d 573, 577-78 (M.D.N.C. 2019). However, Congress amended § 3852(c)(1) when it passed the First Step Act.  Pertinent here, the First Step Act added a provision to § 3852(c)(1) that allows a defendant to bring a motion for compassionate release directly in a district court after either "the defendant has fully exhausted all administrative right to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Once the exhaustion requirement is met, a defendant must either (1) have "extraordinary and compelling reasons" for a compassionate release or (2) be at least seventy years old, have served at least thirty years in prison, and have the Director of the BOP determine that the defendant is not a danger to the public.

2

Id. The defendant bears the burden of establishing that
extraordinary and compelling reasons justify his release. See
United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); see
also United States v. Hargrove, 30 F.4th 189, 195 (4th Cir. 2022).
Further, while a court need not address every argument raised by
a defendant, it must fully explain its decision in light of the
particular circumstances of each case. United States v. Osman,
No. 21-7150, 2022 WL 485183, at *2 (4th Cir. Feb. 17, 2022) (per
curiam) (unpublished) (citing United States v. High, 997 F.3d 181,
188-89 (4th Cir. 2021)). Additionally, a court, in considering a
reduction in sentence pursuant to § 3582(c)(1)(A), must consult
the sentencing factors set forth in 18 U.S.C. § 3553(a) and may
grant the reduction only if it is "consistent with [the] applicable
policy statements" issued by the United States Sentencing
Commission. 18 U.S.C. § 3582(c)(1)(A). "[E]ven if a movant
satisfies the threshold eligibility requirement for obtaining
relief, a district court has discretion to grant or deny relief
based on its assessment of the salient § 3553(a) factors." United
States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022).

As amended, United States Sentencing Guideline § 1B1.13(a)
essentially reiterates the requirements of § 3582(c)(1)(A), with
the additional requirement that a defendant not be "a danger to
the safety of any other person or to the community." U.S.S.G. §
1B1.13(a)(2); see also Beck, 425 F. Supp. 3d at 578. Section

3

1B1.13(b) then provides a non-exhaustive list of examples of extraordinary and compelling reasons to grant a compassionate release. The four enumerated reasons are (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; and (4) the defendant is a victim of abuse. U.S.S.G. § 1B1.13(b). Section 1B1.13(b)(5) then provides a catch-all provision for "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." Section 1B1.13(b)(6) also provides that a court may consider a change in the law when determining whether the defendant presents an extraordinary and compelling reason, if the "defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment," and if the change in the law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time of the motion is filed, and after full consideration of the defendant's individualized circumstances." Finally, § 1B1.13(d) states that rehabilitation of the defendant is not alone an extraordinary and compelling reason, but it may be considered along with other circumstances.

Courts maintain broad discretion in the evidence they may consider on a motion to reduce a sentence under the First Step

4

Act.  Concepcion v. United States, 597 U.S. 481, 498-502 (2022).

However, they do not have unfettered jurisdiction or discretion to

modify criminal sentences.  See United States v. Goodwyn, 596 F.3d

233, 235 (4th Cir. 2010) ("The law closely guards the finality of

criminal sentences against judicial 'change of heart.'" (quoting

United States v. Layman, 116 F.3d 105, 109 (4th Cir. 1997))).  A

court may modify a sentence only when a provision in the Federal

Rules of Criminal Procedure or a statute, such as 18 U.S.C.

§ 3582(c), expressly permits it do so.  Even then, § 3582(c) is

appropriately invoked only in unusual cases, or, as the Fourth

Circuit has stated, the "most grievous cases."  United States v.

McCoy, 981 F.3d 271, 287 (4th Cir. 2020); see United States v.

Osman, No. 23-6544, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024)

(unpublished) (stating that compassionate release is "a narrow

means for a district court to modify a term of imprisonment that

has already been imposed, an act which the courts are generally

barred from undertaking").[1]  It is not a vehicle for repeated

reconsideration of sentences as a way to circumvent the general

rule of finality.  See Goodwyn, 596 F.3d at 235-36.  Nor is it a

vehicle to collaterally attack a federal conviction or sentence.

United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022).

---

[1]Unpublished opinions of the Fourth Circuit are not precedential but are
cited for their persuasive, but not controlling, authority.  See Collins
v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

5

The Government does not contest that Holman has satisfied the exhaustion requirement.  (Doc. 82 at 6 n.4.)  Thus, the court turns to the merits of his motion.  Holman proffers several arguments in favor of compassionate release.  (Doc. 78 at 4.)  Each will be addressed in turn.

A.    Family Circumstances

First, Holman cites the death of his "baby's mother and health issues with other family members," which he contends means he is "needed to act in a caregiver role."  (Id. at 4, 26-28.)  As to the minor child, Holman notes that he is "in the process, through the county child service agency and appropriate family authorities where the child currently resides, [of] verifying paternity," though he reports that the child is his.  (Id. at 27.)  He states that the child's mother is deceased, which he argues should "weigh heavily towards this court considering [his] need to care for the child as an extraordinary and compelling reason."  (Id.)  Currently, the child is being cared for by his maternal grandparent.  (Id.)

An extraordinary and compelling reason for compassionate release may be shown where the caregiver of a defendant's minor child dies or becomes incapacitated.  U.S.S.G. § 1B1.13(b)(3)(A).  As Holman argues, amended Sentencing Guideline § 1B1.13(b)(3)(A), which details the death or incapacitation of the caregiver of the defendant's minor child, does not specify that "the defendant would

6

be the only available caregiver" for the family member, unlike other subsections.[2]   Cf. U.S.S.G. § 1B1.13(b)(3)(B)-(D).   Some courts have applied the guideline without requiring more.  See, e.g., United States v. Cunningham, No. ELH-18-017, 2024 WL 4057004, at *8 (D. Md. 2024) (observing that "the plain language of the current Guidelines does not require a defendant to demonstrate that there are no other available caregivers for a minor child"); United States v. Lanphear, CR 19-19, 2024 WL 97369, at *2 (D. Mont. 2024) (finding that "there is no requirement that the defendant be the child's only available caregiver"); United States v. Smith, No. 21-cr-00279, 2024 WL 4556521, at *4 (D. Nev. Oct. 22, 2024) (noting that the court "cannot import a requirement that the Sentencing Commission failed to include").  The guidelines are advisory, however, and this court, like others, has generally considered whether no other caregiver is available.  See, e.g., United States v. Cates, No. 20-CR-223, 2023 WL 167409, at *3-4 (M.D.N.C. Jan. 12, 2023) (finding no extraordinary and compelling reasons existed because the defendant failed to show no other

---

[2] Before the amendment, the guideline's commentary provided that an extraordinary and compelling reason existed in the event of "[t]he death or incapacitation of the defendant's only family member capable of caring for the defendant's minor child or children."  U.S.S.G. § 1B1.13 cmt. n.1(A)(iii) (2015).  In 2016, the guideline was amended to include a "Family Circumstances" category.  See Sentencing Guidelines for United States Courts, 81 Fed. Reg. 27262, 27264 (May 5, 2016).  The amendment "delete[d] the requirement under prong (i) regarding the death or incapacitation of the 'defendant's only family member' caregiver, given the possibility that the existing caregiver may not be of family relation."  (Id.)

7

suitable caregiver for his minor children or that he would himself be a suitable caregiver given his history of assaults and the offense conduct involving drug sales from a residence where he lived with his fiancée and small children); United States v. Barlow, No. 19-cr-00024-4, 2023 WL 2755598, at *3 (W.D. Va. Mar. 31, 2023) (finding defendant failed to demonstrate that she is the sole available caregiver for her minor child); United States v. Waldron, No. 17-CR-00116, 2023 WL 4306910, at *3 (S.D. W. Va. June 30, 2023) (finding failure to provide sufficient evidence that caregivers were unable to care for child); United States v. Whitted, No. 15-CR-00372, 2025 WL 1944018, at *7 (E.D.N.C. July 15, 2025) (noting in dicta that courts have found compassionate release based on incapacitation of the caregiver of a defendant's minor child inappropriate when there may be relative caregivers available to take custody).

The court need not resolve here whether proof that the child's caregiver is incapacitated alone suffices to establish an extraordinary and compelling reason. That is because even if it did, Holman has failed to make a robust evidentiary showing that he is the parent of the minor child. He makes that assertion, but he provides no proof, or even indication, of the child's age or identity. In contrast, his presentence report, filed August 8, 2012, notes that in his interview he reported having no dependents and claimed two possible adult children (one of which he was unsure

8

was actually his).  (Doc. 50 ¶ 88.)  At the time of his presentence interview, he had not had any contact with either adult child for years.  (Id.)  Now, he claims he is the father of a minor child, but he states that he is making arrangements to prove his paternity, thus indicating some question as to whether the child, which he has not claimed before, is his.  (Doc. 78 at 27.)  This is far from an adequate record for the court to conclude that the undisclosed minor exists and is actually his child.

As to his family members, he contends that his parents are "elderly and in declining health."  (Id. at 26.)  He says that he will, "in large part," be responsible for their caretaking.  (Id.) The Government argues that this, while "difficult," is a routine part of aging.  The applicable guideline, § 1B1.13(b)(3)(C), requires proof not only that the defendant's parent be "incapacitated," but proof that the defendant is the "only available caregiver for the parent."  Here, Holman has shown neither.  Therefore, while Holman's expressed desire to care for his aging parents is commendable, this ground does not constitute an extraordinary and compelling reason for compassionate release.

## B.    Length of Sentence

Second, Holman argues that he has served over 10 years of his sentence, and it is "unusually long."  (Doc. 78 at 4, 23-24.)  The Government contends that Holman's guideline sentence cannot be considered unusually long.  (Doc. 82 at 10.)

9

Guideline § 1B1.13(b)(6) provides:

> Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Notably, not only must a defendant serve at least 10 years of imprisonment, he must demonstrate (1) a change in the law that would (2) produce a gross disparity between the defendant's sentence and one likely to be imposed today. Here, Holman has shown neither. He identifies no change in law applicable to his case, and he has not articulated how any sentence today would be any different because of a change in law. Indeed, Holman was sentenced at the low end of the guideline range. This ground therefore lacks merit.

## C. Health

Third, Holman argues that he has "chronic health issues including extensive back issues, hypertension and diabetes that, due to [his] incarceration and the overloaded status of the [BOP] healthcare system, [he] is not receiving adequate treatment for." (Doc. 78 at 4.) He details multiple medical conditions elsewhere in his motion: hypertension, Type II diabetes, hernia, heart/coronary blockage issues, chronic esophageal issues,

10

diverticulosis of the intestine, osteophytes (left knee), neuralgia/neuritis, and a bulging disc in the spine "that needs surgery." (Id. at 25.) The Government contends that there is evidence that Holman exaggerates his limp only when at medical (Doc. 83 at 1) but, even so, his conditions are being adequately treated in the BOP (Doc. 82 at 12). In support, the Government has filed 274 pages of Holman's medical records. (Doc. 83.)

A review of Holman's records indicates that his conditions appear to be adequately treated in the BOP. He has been provided medication for his hypertension and diabetes. (Id. at 84, 110-11.) His hernia was treated with surgery in July 2024. (See id. at 96.) And this year, he underwent an echocardiogram, which was normal, and a CT of his coronary arteries was scheduled by medical providers. (See id. at 18.) His neurological/back pain is also being treated. (Id. at 9-10, 12.) Finally, he declined a recommended colonoscopy despite a history of polyps. (Id. at 18, 26.)

An aging defendant will likely have the medical consequences attendant with the passing of years. Thus, Holman's burden is to demonstrate that his medical conditions are serious, "substantially diminish" his ability to provide self-care within the BOP, and are those from which he is not expected to recover. U.S.S.G. § 1B1.13(b)(1)(B). Here, he has failed to do so. United States v. Bailey, No. 11-cr-00010, 2024 WL 589118, at *2 (W.D.N.C.

Feb. 13, 2024) (denying compassionate release for defendant with congestive heart failure, atrial fibrillation, hypertension, and hyperlipidemia as conditions were being treated adequately in BOP and did not limit self-care); United States v. Hunter, 16-CR-442, 2023 WL 7919580, at *3-4 (M.D.N.C. Nov. 16, 2023) (denying compassionate release for defendant with aortic type B dissection, hypertension, acute kidney injury, stage III kidney disease, and prostate enlargement as defendant failed to demonstrate that he was unable to provide self-care and the record reflected that he had received the necessary treatment).

### D.  Prison Conditions and COVID

Fourth, Holman argues that "[t]he conditions [he was] exposed to during the COVID pandemic were overly harsh and punitive" and instilled a fear of the virus.  (Doc 78 at 4, 20-21.)  The Government responds that the court denied Holman's prior motion for compassionate release based on COVID-19 in 2021, when the virus was impacting the BOP, and he has not identified any new reason justifying a different conclusion now.  (Doc. 82 at 7.)

To the extent Holman relies on his past incarceration, he has not articulated how the COVID virus made custody more punitive or difficult for him.  Absent more, his argument fails to rise to the level of being "extraordinary and compelling."  See Blackwell v. United States, No. 18-cr-00999, 2023 WL 7002560, at *5 (D.S.C. Oct. 24, 2003) ("To establish 'extraordinary and compelling

12

reasons' on a condition of confinement based on the impact of the COVID-19 pandemic, a defendant is required to proffer 'a confluence of circumstances unique to her case – and beyond just the harsh conditions of incarceration occasioned by the pandemic . . . .'" (quoting United States v. Hatcher, No. 18 CR 454-10, 2021 WL 1535310, at *4 (S.D.N.Y. Apr. 19, 2021))). Moreover, fear of the COVID virus is not a sufficient basis for compassionate release. See United States v. Tate, 16-cr-74, 2022 WL 827256, at *2 (W.D.N.C. Mar. 18, 2022); United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021) ("Fear of COVID doesn't automatically entitle a prisoner to release."); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."). The pandemic is over in the United States, and cases of COVID are being managed. See United States v. Awosika, No. ELH-17-311, 2023 WL 3122131, at *12 (D. Md. Apr. 27, 2023) ("President Biden claimed that the pandemic is 'over' in the United States."). The risk of infection for inmates, like Holman, is substantially reduced, as he, like others, has received the COVID vaccines. (Doc. 72 at 2.) As a result, this ground fails.

## E. Rehabilitation

Fifth, Holman cites his participation in "a remarkable amount of post-offense rehabilitation." (Doc. 78 at 4, 22-23.) However,

13

he does not detail any particular program or achievement. Rather,
he spends most of his time downplaying his disciplinary record
while in prison, which he characterizes as "not spotless." (Id.
at 22.) This is attributable, he says, to his placement in "a
historically violent, maximum-security environment." (Id.) The
Government responds that Holman understates his disciplinary
record, demonstrating that he has been sanctioned 16 times since
2016 for incidents including assault of an inmate, fighting,
contraband (amphetamines), telephone abuse, refusal to submit to
drug testing, and multiple sexual-related infractions. (Doc. 82
at 8-9 (citing prison records).)

Section 1B1.13(d) of the Guidelines states that
rehabilitation of the defendant alone is not an extraordinary and
compelling reason, but it may be considered along with other
circumstances. The court considers all of Holman's post-
sentencing conduct in assessing his motion. See Pepper v. United
States, 562 U.S. 476, 503-04 (2011). Here, Holman has not
demonstrated that he has engaged in efforts at rehabilitation that
are extraordinary, United States v. Vaughn, 62 F.4th 1071, 1072
(7th Cir. 2023) (noting that taking classes while incarcerated is
"common rather than extraordinary"), and his record of multiple
infractions alone diminishes his claim.

### F. Victim of Abuse

Holman argues next that he has been the victim, "on several

14

different occasions, of physical and even sexual abuse" by BOP employees. (Doc. 78 at 28-30.) However, he provides virtually no detail. He notes an "instance at Petersburg [that] involved Petitioner being groped by a staff member,"[3] but he declines to provide further information, citing pending litigation and fear that doing so "could have an adverse effect" on that litigation. (Id. at 29.) He offers to provide more if the court should "require" it. (Id.)

The Government acknowledges that § 1B.13(b)(4)[4] contemplates a reduction in sentence if the defendant "is the victim of sexual abuse involving a 'sexual act' as defined in 18 U.S.C § 2246(2) or physical abuse resulting in 'serious bodily injury' as defined in the commentary to § 1B1.1." (Doc. 82 at 16.) However, the Government notes, the guideline states that any misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger." U.S.S.G.

---

[3] While it is not the court's duty to "scour the record to locate uncited evidentiary support for a party's factual assertions" that were not brought to the court's attention, Seaman v. Duke Univ., No. 1:15-CV-462, 2018 WL 10446957, at *1 (M.D.N.C. June 6, 2018), the court's review of Holman's medical records reflects that he filed a complaint that on April 16, 2024, while undergoing a strip search, the officer "made him bend over for a time that he feels was 'too long.'" (Doc. 83 at 13-15.) It is unclear if this is the incident Holman asserts.

[4] The Government incorrectly cites to § 1B.12(b)(4).

§ 1B1.13(b)(4).  As the Government argues, there has been no such conviction, finding, or admission for the conduct Holman alleges. (Doc. 82 at 17.)  Consequently, Holman's claim for relief under § 1B1.13(b)(4) fails.

In sum, Holman's various contentions, alone or considered collectively, fail to constitute an extraordinary and compelling reason for compassionate release.

## G.    § 3553(a) Factors

Even if Holman had offered an extraordinary and compelling reason to support compassionate release, however, it is not warranted because the section 3553(a) factors do not weigh in his favor.  Section 3553(a) requires a court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing.   18 U.S.C. § 3553(a). Importantly, the "text of § 3553(a) does not make any factor, or combination of factors, dispositive."  United States v. Kibble, 992 F.3d 326, 334-35 (4th Cir. 2021) (Gregory, C.J., concurring). Thus, the court must consider:

  (1) The nature and circumstances of the offense and the
      history and characteristics of the defendant;
  (2) The need for the sentence imposed:
      (A) To reflect the seriousness of the offense, to
          promote respect for the law, and to provide just
          punishment for the offense;

16

(B) To afford adequate deterrence to criminal conduct;

(C) To protect the public from further crimes of the defendant;

(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The kinds of sentence[s] and the sentencing range established for [the applicable offense category as set forth in the guidelines] . . . ;

(5) Any pertinent policy statement . . . by the Sentencing Commission . . . ;

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Here, the § 3553(a) factors weigh against granting Holman's motion for compassionate release.

In this case, Holman's offense was serious. He committed the offense of possessing a firearm after a felony conviction. (See Doc. 28.) Prior to retrieving the loaded firearm, he had kicked open his niece's bedroom door and shoved her in the face with his

17

hand while making threatening statements. (Doc. 82 at 17.) Further, Holman has demonstrated a history of assaultive behavior. In fact, Holman has sixteen assault convictions on his record, with a particular history of abusing women in domestic violence-related incidents. (Id. at 17-18; see also Doc. 72 at 11.)

Holman has also been undeterred by his prior sentences. Indeed, as the Government notes, while incarcerated in the present case, he has had multiple disciplinary infractions involving conduct from 2016 through 2025. These include possessing drugs/alcohol (Apr. 30, 2025), assaulting without serious injury and refusing to obey an order (Apr. 16, 2024), fighting with another person (Apr. 19, 2024, Apr. 16, 2024, and Sept. 6, 2021), engaging in sexual acts (Apr. 16, 2024, Dec. 14, 2023, June 14, 2021, and June 25, 2018), making a three-way phone call (Mar. 4, 2024), making sexual proposal/threat (June 30, 2023), refusing drug/alcohol test (Apr. 26, 2022), indecent exposure (Mar. 14, 2022), misusing authorized medication (Mar. 7, 2022 and Jan. 22, 2016), disruptive conduct (July 31, 2019), and stalking (Feb. 26, 2018). (Doc. 82-2.) The court considers that post-sentencing conduct in assessing his motion. Pepper, 562 U.S. at 503-04.

Considering the totality of the circumstances, the court finds that compassionate release is unwarranted, as it would fail to reflect the nature and seriousness of the offenses, promote respect for the law, adequately protect the community, and provide

18

adequate deterrence.  For these reasons, even if extraordinary and compelling circumstances existed, the § 3553(a) factors disfavor release.

### H.    Appointment of Counsel

Finally, Holman seeks the appointment of counsel to pursue his motion.  (Doc. 78 at 9.)  There is no general constitutional right to appointed counsel in post-conviction proceedings, see United States v. Williamson, 706 F.3d 405, 416 (4th Cir. 2013), although the court retains discretion to appoint counsel in § 3582(c) proceedings if the interests of justice so require. Based on the court's review of the filings and Holman's circumstances, he has not demonstrated that he is incapable of seeking his requested relief without the appointment of counsel, and he has not otherwise demonstrated that appointment of counsel is necessary here.  As such, his request for appointment of counsel will be denied.

## III.  CONCLUSION

For the reasons stated,

IT IS ORDERED that Holman's motion for compassionate release and request for appointment of counsel (Doc. 78) is DENIED.

/s/    Thomas D. Schroeder
United States District Judge

December 5, 2025

19